IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: |
| | : | |
| v. | : | |
| | : | VIOLATIONS: |
| | : | |
| ANTHONY RICHARD MOAT, | : | 18 U.S.C. § 1752(a) |
| | : | (Knowingly Entering or Remaining in any |
| | : | Restricted Building or Grounds Without |
| | : | Lawful Authority) |
| Defendant. | : | |
| | : | 40 U.S.C. §§ 5104(e)(2)(D) & (G) |
| | : | (Violent Entry or Disorderly Conduct) |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND ARREST WARRANT

I, John Longmire, Special Agent, Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

### PURPOSE OF AFFIDAVIT

1. This Affidavit is submitted in support of a Criminal Complaint charging ANTHONY RICHARD MOAT (hereinafter "MOAT") with violations 18 U.S.C. § 1752(a) and 40 U.S.C. § 5104(e)(2). I respectfully submit that this Affidavit establishes probable cause to believe that MOAT (1) did knowingly enter or remain in any restricted building or grounds without lawful authority, or did knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct, and (2) did willfully and knowingly engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of any deliberations of either House of Congress. Specifically, on or about January 6, 2021, MOAT traveled to Washington, D.C., and knowingly and willfully joined and encouraged a crowd of individuals who

1

forcibly entered the U.S. Capitol and impeded, disrupted, and disturbed the orderly conduct of business by the United States House of Representatives and the United States Senate.

## BACKGROUND OF AFFIANT

1.  I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") for over fourteen years. I am assigned to the FBI's Washington Field Office Cyber Task Force, where I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for cyber-crimes, including, cyber intrusions, online money laundering, criminal cryptocurrency usage, and criminal online forums. During my career, I have used a number of investigative techniques, including: (a) conducted, monitored, and reviewed physical and wire surveillance, including Title III wiretap investigations; (b) executed search warrants at locations where records of criminal activity have been found; (c) reviewed and analyzed numerous recorded conversations and other documentation of criminal activity; (d) debriefed cooperating defendants and confidential human sources; (e) monitored wiretapped conversations; (f) conducted surveillance of individuals engaged in various crimes; and (g) led and participated in search warrants and arrest warrants for various crimes. Moreover, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c), that is, a government agent engaged in enforcing the criminal laws, including Title 18, United States Code, Sections 1752(a) (entering or remaining in any restricted buildings or grounds or impeding or disrupting the orderly conduct of Government business), and Title 40, United States Code, Sections 5104(e)(2)(A) and (G) (entering or remaining on the floor of either House of Congress or demonstrating in any of the Capitol Buildings).  As such, I am duly authorized to request a search warrant concerning those offenses.  In addition to my regular duties, I am currently tasked with investigating criminal activity that occurred in and around the Capitol grounds on January 6, 2021.

2.	Unless otherwise stated, the information in this Affidavit is either personally known to me, has been provided to me by other individuals, or is based on a review of various documents, records, and reports.  Because this Affidavit is submitted for the limited purpose of establishing probable cause to support an application for an arrest warrant, it does not contain every fact known by me or the United States.  The dates listed in this Affidavit should be read as "on or about" dates.

## PROBABLE CAUSE

3.	The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

4.	On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

5.	On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

6.	As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the

U.S. Capitol.  As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

7.     At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

8.     At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

9.     Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been

confirmed secured. The proceedings resumed at approximately 8:00 pm after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

10. During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

36. On February 19, 2021, Anthony Richard Moat ("MOAT") contacted the FBI and admitted to being inside the U.S. Capitol on January 6, 2021. On that same date, Moat sent a video taken on his cellular telephone while inside the U.S. Capitol building on January 6, 2021 to FBI Task Force Officer Lee Nolan. The below images are screenshots from the video provided by MOAT.

 

37.  After this interview, Officer Nolan obtained MOAT'S driver's license photo to compare with images of January 6, 2021 U.S. Capitol riot footage in the area seen in MOAT's provided video. The below images (without the red circle) was obtained from Capitol Police CCTV footage from inside the U.S. Capitol on January 6, 2021.





38.  Affiant has compared the video taken by MOAT with Capitol CCTV videos and determined that MOAT's provided video was taken from vantage point of the person circled in red

as seen in above CCTV images. Affiant submits the above images from Capitol Police CCTV show MOAT whose face is circled in red, was inside the U.S. Capitol during the January 6, 2021 riot.

## CONCLUSIONS OF AFFIANT

11. Based on the foregoing, your affiant submits that there is probable cause to believe that Anthony Richard Moat violated:

   a. 18 U.S.C. § 1752(a), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (3) knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, obstruct or impede ingress or egress to or from any restricted building or grounds; or (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a restricted building includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

   b. 40 U.S.C. § 5104(e)(2), which makes it a crime for an individual or group of individuals to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds

or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; or (G) parade, demonstrate, or picket in any of the Capitol Buildings.

12. As such, I respectfully request that the court issue an arrest warrant for Anthony Richard Moat.

The statements above are true and accurate to the best of my knowledge and belief.

John Longmire
Special Agent
Federal Bureau of Investigation

*Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 7th day of April 2021.*

ZIA M. FARUQUI
MAGISTRATE JUDGE
FOR THE DISTRICT OF COLUMBIA