**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00375-TSC-1 |
| | : | |
| ANTHONY RICHARD MOAT | : | Honorable Judge Tanya S. Chutkan |
| *Defendant.* | : | |
| | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING
AND ASSESSMENT OF 18 U.S.C. § 3553(a) SENTENCING FACTORS AND
MOTION FOR VARIANCE**

COMES NOW, Anthony Moat, by and through counsel, and provides the Court with his position regarding the application of the sentencing factors to the Court's obligation to impose a sentence "sufficient, but not greater than necessary to comply" with the factors found in 18 U.S.C. § 3553(a). Mr. Moat, with a clean record and after accepting responsibility for his actions, requests probation and a fine as the appropriate penalty for his first offense misdemeanor conviction under 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.

Pursuant to USSG § 1B1.9, the U.S. Sentencing Guidelines do not apply to any count of conviction that is a Class B misdemeanor. Because there are no relevant sentencing guidelines for the Court to follow, it is even more important for the Court to weigh Mr. Moat's actions both on and after January 6th to determine a fair and individualized sentence under 18 U.S.C. § 3553(a).

Mr. Moat's relevant conduct includes entering the Capitol Building near the Senate Wing Door at 3:21 pm amongst a throng of protestors, walking through the initial lobby and into a hallway, and then exiting the same door at 3:23 pm. Upon entering the building, Mr. Moat can be seen on CCTV footage looking around at the chaos that is being carried out inside, assessing the

situation and its seriousness, and immediately leaving once he realizes the gravity of the situation.

The Government relies on conjecture and mischaracterization of the evidence to present a narrative to substantiate its request for 21-days of incarceration. Relatedly, the Government relies on evidence that was produced to the Defendant for the first time on January 5, 2022, well after the plea hearing, to argue its case. This sentence is not justified by Mr. Moat's behavior and it certainly is not in line with the precedent of his Court in cases similar to Mr. Moat.

Mr. Moat is brutally aware of the seriousness of his conduct on January 6, 2021, and that of the larger collective who gathered in violent protest that day.  He has taken and continues to take fully accountability and responsibility for his actions. As a result of his actions on January 6th and his actions since then, Mr. Moat believes the sentence recommendation made by the United States Probation Office to be appropriate.

## Background

On May 5, 2022, Mr. Moat pleaded guilty to a single count of Parading, Demonstrating or Picking in a Capitol Building, a violation of Title 40, United States Code, Section 5104(e)(2)(G).  Leading up to January 6th, Mr. Moat exchanged text messages with his friends regarding the election and what, if anything, can be done now. Mr. Moat describes the 12th amendment and the powers of the Vice President to review the claims of a fraudulent election that can be made by members of the House and Senate on January 6th. He does not advocate for violence to stop the election certification nor does he preach illegal ways to stop it. Through his texts to his friends, he tries to explain the legitimate, constitutional powers of the sitting members of the House and Senate and what, if anything, they can do during this process. Mr. Moat was not unique in believing that he election could be stopped. This idea was being

preached by sitting House and Senate members to their constituents. In fact, many of which made the same claims from the respective floors of each chamber.

Mr. Moat did not come to Washington D.C. to incite violence. He did come prepared with firearms, flags, banners, or Trump memorabilia. At no point on January 6th does Mr. Moat incite violence, take part in violence, or seem to enjoy the violence. He does not assault law enforcement, by the Government's own exhibits, he is not near anyone assaulting law enforcement, nor is he doing anything more offensive than chanting once with the crowd outside of the Capitol.



On January 6th, Mr. Moat arrived with his girlfriend to D.C., went to the Ellipse to hear the speech by President Trump. Not being able to get into the front of the crowd, Mr. Moat stood on the streets, amongst the crowd. When the crowd dispersed and started making their way to the Capitol, Mr. Moat made his way on the streets towards the lunch trucks parked along the way. Not being a native of D.C., he was not familiar with his surroundings. He ate lunch and was in no rush since he did not have any preconceived plans to go to the Capitol that day. From open-source videos and through Government's exhibits in other trials, it is known that President Trump started his speech at noon. It was roughly 70 minutes. Given this timeline, Mr. Moat would still be at the speech or near the Ellipse at 12:59 p.m. when he sent a text to his friend stating "We stormed the Capitol." It would be nearly impossible for Mr. Moat to have walked over from the Ellipse and be a part of the front-line crowd that stormed the Capitol that day at 1

pm. What is plausible and the truth in this scenario is that Mr. Moat was speaking as a collective "we." We signifying Trump supporters not himself. The Government has used sophisticated AI software to match Mr. Moat's locations throughout that day and it has been corroborated by Mr. Moat's evidence that he voluntarily provided to the FBI. None of the evidence collected or identified shows Mr. Moat as being on the front lines of the breach of the Capitol. It is pure conjecture and irresponsible to state that given the text above, it is likely that Mr. Moat was present at or near the time of the first breach of the Capitol that was occurring at 1 pm.

Mr. Moat contacted the FBI on February 19, 2021, roughly 5 weeks after this incident and admitted to being inside the Capitol on January 6th. He did not thwart investigations, rather supplied all information related to his conduct and helped identify himself and his location to FBI agents. Mr. Moat has been forthcoming and cooperative about his behavior since his initial contact with the FBI on February 19, 2021, which was voluntarily. He spoke with agents without retaining counsel, he provided them an account of his day, corroborated by video footage from his own cellphone without being presented by a search warrant. Since then, he has remained on pretrial release for 21-months without incident.

As demonstrated in the attached letters from family and friends, Mr. Moat's character will ensure that he fulfills the obligations that the Court imposes on him. This commitment should be both encouraged and fostered through a sentence that appropriately balances punishment, deterrence, and rehabilitation.

## Argument

**A.    The Court shall impose a sentence sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).**

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)'s mandates. These include considering the "nature and circumstances

4

of the offense and the history and characteristics of the defendant," reflecting the seriousness of the offense, affording adequate deterrence, protecting the public, and providing necessary rehabilitation to the defendant.  18 U.S.C. § 3553(a)(1-2).

In *United States v. Booker*, 125 S.Ct. 738 (2005), the United States Supreme Court restored to sentencing judges the power to use discretion in determining appropriate sentences. "In the wake of *Booker*, therefore, the discretion of a sentencing court is no longer bound by the range prescribed by the sentencing guidelines.  Nevertheless, a sentencing court is still required to 'consult [the] guidelines and take them into account when sentencing.'" *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker*, 125 S.Ct. at 767).  In light of *Booker*, "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *Id.* (citation omitted).

**B.      18 U.S.C. § 3553(a) Factors to Consider in Sentencing.**

    **1.      Nature and Circumstances of the Offense.**

Mr. Moat pleaded guilty to a single count of Parading, Demonstrating or Picking in a Capitol Building, a violation of Title 40, United States Code, Section 5104(e)(2)(G). Mr. Moat arrived in Washington D.C. to attend the rally and show his support for his candidate—President Trump. He came without association to any groups, did not carry firearms, tactical gear, or anything that can be used a weapon. He did not come prepared or looking for violence that day. As is indicative of his text messages prior to January 6th, he came to be a part of a protest he believed to be in support of his candidate.

After hearing the speech, Mr. Moat makes his way to the food trucks for lunch. He then leisurely follows the crowds closer to the Capitol. Not being from D.C., he did not aim for or

5

direct himself to the Capitol, rather followed the crowds and ended up at the Capitol. Once there, he saw crowds make their way around in various areas. He came across law enforcement but did not see tear gas or fire extinguishers being used against Officers, as is claimed by the Government. Instead, Mr. Moat sees law enforcement standing their line, watching protestors, helping answer questions, and drinking coffee.





At 3:09 p.m., prior to entering the Capitol, he messages a friend about walking up to the Capitol. It is important to note that Mr. Moat himself was not inside the Capitol and had not seen the chaos that was ensuing inside.



Mr. Moat does not enter the Capitol until 3:21 p.m. where he appears to be recording the events that he is seeing, as he is walking up. Mr. Moat can be seen assessing the situation inside the Capitol in real time, sees a line of officers who are standing inside the lobby but not telling anyone to leave, walks about 50 steps into the hallway before he sees a broken window. Upon seeing this, he immediately turns around exits the Capitol for good at 3:23 p.m. Mr. Moat does not argue that he is blameless. He went inside the Capitol, he walked into the hallway. Upon the first sign of active vandalism in the Capitol, including those who had broken into an office, Mr. Moat knows this is not something he wants to be a part of, even as a viewer.

On January 12, 2021, Mr. Moat deleted his Facebook account and deactivated his LinkedIn. Mr. Moat expressed concern about identification 6 days after this incident to the same friend and asked them not to tell anyone he was there. However, a month after this, Mr. Moat not only surrendered evidence of his location and culpability, he spoke freely and openly with the FBI agents in an effort to assist their search and investigation. While Mr. Moat's instinct might have been one of self-preservation right after January 6th, his true sense of self led him to self-surrendering evidence and information to the case agent. Mr. Moat's attorney, once he was

charged, provided passwords to his cell phone to assist the FBI in carrying out their search warrant.

      2.      **History and Characteristics of the Defendant.**

Mr. Moat is a 36-year-old, business support specialist in Pennsylvania. Mr. Moat resides with his girlfriend and their shared dog, Rootbeer. Prior to this conviction, Mr. Moat had a pristine record that he took pride in. Mr. Moat grew up in a single-mother home where his mother, Patricia Moat, worked hard to provide for her family. Mr. Moat has two siblings, one who is a Sergeant with the Sayreville Police Department. Throughout the pendency of this proceeding, Mr. Moat has remained employed.

The letters from his family and friends more fully demonstrate all aspects of Mr. Moat, through thoughtful and loving support, while acknowledging his wrong. These family members are not blinded by their love for Anthony. They are soberly aware of the consequences of Anthony's actions and are the ones truly aware of his remorse.

> His mother writes of the kind of man she has known her son to be:
>
> Anthony always followed rules at home and in school. He was an easy going child and never started trouble with anyone. Anthony is an honest, conscientious, compassionate and a loyal person who has integrity. Anthony has been respectful to his elders, siblings, teachers, friends, co-workers and has always had the utmost most respect for law enforcement as he has a sister who is a Sergeant in the Sayreville, New Jersey Police department.
>
> Ms. Moat describes the sense of remorse she has seen in Anthony over the last two years:
>
> Anthony and I have talked numerous times for many hours over the past two years about what he is going through, since his arrest on April 9, 2021. Anthony absolutely recognizes the charges he is facing and is definitely remorseful of his actions. This is the first time Anthony has ever been involved in any legal trouble in his life. Anthony has always been a law-abiding person.  Anthony went to the rally that day by himself with no intent to cause any harm and was not with any other groups.
>
> Lastly, she writes of his accountability throughout this case:

> When Anthony received a call from a friend saying that someone from the FBI contacted him and was asking questions about Anthony being at the capitol on January 6, 2021, it was Anthony who asked for the FBI agent's name and phone number so he could contact him himself. Anthony called the FBI agent and was completely forthcoming with his actions that day.  Anthony admitted he was inside the Capitol Building, he was also very cooperative and later that same day provided videos he had taken from his phone on January 6th.

Exhibit 1, Patricia Moat Letter.

Those closest to Mr. Moat have seen the changes he has had in his life since this incident and his arrest. His fiancé writes:

> He is not an insurrectionist, he is a strict rule follower, and most of all he loves the United States chiefly because he loves the law and what it stands for.  I see it every day when I look at him that he is mentally, physically, emotionally, financially, and spiritually haunted by that brief moment in time.

In speaking of his actions that day and how he found himself in that situation she writes:

> And that is just the type of person Anthony is; Inquisitive, always looking to learn, know and seek the truth.  As the saying goes "curiosity killed the cat," and in this situation it could not ring more true—it got the best of him.

Exhibit 2, Suzanne Chea Letter.

Mr. Moat has many friends and community members who have written to the court to discuss his character as well:

> My name is Marcus Böber and I was Anthony's supervisor until November 2022. I know him for ~3.5 years when he joined my team as young professional. It was his first job after graduation. When he informed me about the investigation against him, I could witness in basically every conversation with him that this topic was weighing heavily on him. He reported about sleepless nights and how his current situation is hindering him to make progress in his life.

> Your honor, when I look at Anthony, I am seeing a young man with idealistic motives (esp. a strong believe in justice), who was carried away by the moment and – as many others – didn't understand the gravity of the situation he was in before entering the building. I am also seeing a man who is ready to take over more responsibility in his life and I strongly believe this situation has already taught him a great lesson. A lesson which will help him to give his future family the right direction. Anthony is not a threat for the society or dangerous for anyone.

9

Exhibit 3, Marcus Boeber Letter.

> I am a close friend of Anthony's and consider him to be my best friend. I wasn't surprised when I found out that Anthony reached out to authorities and candidly volunteered information upon hearing they had questions, without so much as consulting his lawyer. Such is his orientation towards the law; un-hostile, cooperative, and trusting. Aside from the few minutes in question, Anthony is a model citizen in many ways. The child of a single mother, he worked as a doorman, cab driver, and dishwasher, before making the decision to go to college.
>
> Anthony has expressed a great deal of regret and remorse over walking inside the capitol building on Jan. 6, 2020. Our daily walks, which were previously decorated with conversations about philosophy, current events, personal and work life, or the latest book, have turned into outlets for Anthony to express his grief, remorse, and anguish over his actions that day. He has accepted responsibility, both before the court and to me personally. "I should have known better" is a phrase I have gotten used to hearing.

Exhibit 4, Andrew Beshara Letter.

> I whole heartedly understand the severity of the situation Anthony is in. I know that he is taking full responsibility for his actions and I wouldn't expect otherwise from him. Life can teach us some pretty big lessons as we evolve and I know this has profoundly affected him in many ways.

Exhibit 5, Melissa Daidone Letter.

> I am hoping that this incident alone does not wholly define him in your perspective, as I believe this lapse in judgement does not nullify the evidence that he is, in all areas of his life, a loving brother and son, and a law-abiding, productive citizen in our society.
>
> Accountability not only promotes trust, but taking ownership allows us the advantage of learning and improving ourselves for the future. I respectfully request that when contemplating his sentence please consider affording him the opportunity to continue to improve and grow from this incident, with the dignity of remaining a productive member of society with his family. Our family has endured the pain and remorse of this mistake and have grieved with and for Anthony and are hoping to be granted the grace to move forward together.

Exhibit 6, Angela Moat Letter.

During the pendency of this proceeding, Mr. Moat has relied on these friends and family. He needs his family, and his family needs him. They are aware of the severity of this offense. They will support him and ensure that he refrains from any future criminal conduct. These

10

letters speak not only of his rehabilitation, but also to the supportive and faithful network upon which Mr. Moat can lean, which further supports future deterrence.

>    3.  **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.**

The nature and circumstances of the offense and of Mr. Moat must be balanced with imposing a sentence that reflects the seriousness of this offense, respects the rule of law, and provides a just punishment.  Mr. Moat understands the seriousness of this charge and, indeed, the entirety of what occurred on January 6, 2021.  That is why he took responsibility for his actions, and he pleaded to this offense and has accepted the recommendation made by the Probation Office for fines despite committing no acts of destruction or vandalism himself.

Mr. Moat takes full responsibility for his actions and his role.  He has spent every day since January 6 reliving that day, and he faces the constant reminder of his wrongdoing.  Likewise, he suffers from the seriousness of his offense every day, whether with having to face friends and family members, the indelible shame this has brought upon his law-abiding family, or living in the uncertainty of losing everything he has worked for over the last two years.  Every future job application will require the disclosure of his crime and he will forever live with the ignominy of his actions.

As serious as Mr. Moat's actions were, they must be viewed in context when considering sentencing.  Unlike others, Mr. Moat did not bring any weapons with him to the rally.  Nor did he bring any items that suggested he anticipated what ended up occurring.  He did not bring body armor or a helmet.  He did not bring a radio or a gas

11

mask. In fact, he did not even bring any political apparel. He did boast about entering the Capitol and he did not remain defiant following January 6—as many have done.

### To Afford Adequate Deterrence to Criminal Conduct.

Mr. Moat has been adequately deterred and is not likely to engage in future criminal conduct. He has no criminal record, so this misdemeanor conviction serves as a greater punishment and deterrence than it may for someone with an extensive record. He will now live with its consequences daily, bother personally and professionally.

He is certain to face consequences far beyond what he would have previously imagined. He faces harassment and embarrassment, and his future prospects will be more limited. This will harm him financially, but also emotionally as he knows he will not be able to support his family in the same way. He accepts this reality, and he understands that real consequences are just and appropriate, but he is deterred before he even arrives at sentencing.

His family faces constant harassment, his name is forever associated with his actions on the internet and he will always be branded by his offense that day. He accepts this reality, and he understands that real consequences are just and appropriate.

Upon his release, he intends to return to his law-abiding life by continuing his education, marrying his fiancée, and channeling his remorse from this incident into being a productive member of society. These are goals that the principles of sentencing should foster.

### To Protect the Public from Further Crimes of the Defendant.

Mr. Moat is not a danger to the community. Mr. Moat's clean record prior to this conviction suggests that he is well-equipped to follow the Court's orders and maintain a law-abiding life. By all accounts from friends and family members, Mr. Moat is unlikely to follow down a path of criminality. Mr. Moat is a not a dangerous individual or poses any threat to the

public. Further, Mr. Moat's conduct on January 6 is isolated to a unique set of circumstances that unfolded that are not likely to be replicated.

C.      **The Sentencing Guidelines and Probation Office Recommendation.**

Pursuant to USSG § 1B1.9, the U.S. Sentencing Guidelines do not apply to any count of conviction that is a Class B misdemeanor. The United States Probation Office has made their sentencing recommendation to the Court and recommends the following: 36 months of probation, a fine of $1,500, restitution of $500, and 60 hours of community service. The United States Probation Office does not recommend incarceration. Their recommendation is made due to minimal culpability as compared to others who were present on January 6th. They go on to state that Mr. Moat is not a present danger to society and the goals of sentencing can be accomplished through a non-custodial sentence. They additionally are not concerned about Mr. Moat's rehabilitation.

In light of his role in the offense, his history and characteristics, and the need to impose an appropriate sentence, Mr. Moat requests the Probation Office's sentencing recommendation as an appropriate sentence to reflect the needs of sentencing.

## Conclusion

For these reasons, Defendant respectfully requests a period of 36 months of probation along with the fines and restitution outlined in the Probation Office's recommendation.

> Respectfully submitted,
>
> Anthony Moat
> By Counsel

\_\_/s/_____
Farheena Siddiqui
D.C. Bar No. 888325080

Law Office of Samuel C. Moore, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: fsiddiqui@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January, 2023, I electronically filed the foregoing with the Clerk of Court Using the CM/ECF system, which will then send a notification of such filing (NEF) to:

>   Brian Daniel Brady
>   DOJ-CRM
>   1301 New York Avenue NW
>   Washington DC, DC 20005
>   202-834-1916
>   Email: brian.brady@usdoj.gov

>                               /s/
>   Farheena Siddiqui
>   D.C. Bar No. 888325080
>   Law Office of Samuel C. Moore, PLLC
>   526 King St., Suite 506
>   Alexandria, VA 22314
>   Email: fsiddiqui@scmoorelaw.com
>   Phone: 703-535-7809
>   Fax: 571-223-5234